Ready to call the next case, please. Mr. Fisher. Good morning, Your Honor. Good morning, all of your honors. May it please the court, counsel, representing the defendant in this case, Cedric Dockery. Mr. Dockery was convicted in a jury trial of both simple possession and possession with intent to deliver a controlled substance. Jury found on April 6, 2010, Dockery possessed 1.3 grams of a substance containing cocaine. Based on one act, one crime principles, he was only sentenced for the greater offense, and that was to a term of 10 years imprisonment. The three issues are raised on appeal, reversing the order a bit in issue two, the defendant submits that he received ineffective assistance of court to reverse the conviction and remand for a new trial. Based on the reasons set forth in issue one, if your honors agree with issue two and do remand for a new trial, you would respectfully ask your honors to limit that new trial to the simple possession charge because the state failed to prove beyond a reasonable doubt that he intended to deliver the cocaine. And finally, issue three raises a $5 a day credit issue. I would note that the state has conceded issue three, so I won't argue unless your honors have particular questions. Instead, I intend to focus on issue two, ineffective assistance. In doing so, of course, I'll talk a bit about the evidence in the case, so there will be some overlap with issue one. Prior to trial, Mr. Dockery was appointed counsel to represent him. Unfortunately, that attorney made several serious errors, which the defendant submits denied him a fair trial. Those errors began during voir dire. They continued in opening statement, and they culminated at the conclusion of the guilt or innocence phase of the trial when the defense rested without presenting any evidence. Those errors basically break down into two different categories. One was conveying information to the jury that was prejudicial to the that was never actually presented. Now, during voir dire, counsel asked some of the prospective jurors, including some who served on the jury in this case, whether they would hold it against the defendant and be inclined to convict if they were to learn that the defendant had a prior conviction unrelated to drugs. And he told some of them that it was a conviction for a that defendant had recently been released from prison after serving a long sentence for a very serious offense. He proceeded to tell the jury that Mr. Dockery had various stresses in his life and that he attempted to alleviate those stresses by using cocaine, but that he never sold cocaine, never intended to sell cocaine. He further stated that Mr. Dockery earned money legally, for example, by shoveling snow, cutting grass, doing some construction work, and he closed his opening statement by telling the jury that it would hear from Mr. Dockery. Well, the state presented its case, ultimately rested. The defense then rested without presenting any evidence. As a result, the jury never did hear from Mr. Dockery, nor did the jury hear from any witness with respect to the evidence the defense had talked about in opening statement. Now, at the post-trial motion stage, defendant complained about his counsel's conduct, particularly counsel's convincing the defendant not to take the stand on his own behalf, especially in light of what counsel had said in opening statement. The judge appointed independent counsel to represent the defendant at the post-trial motion stage. There was a hearing. Defendant testified. His attorney testified. Interestingly, counsel agreed with the defendant that he did convince his client not to testify. He then gave reasons why he told his client not to testify. At the conclusion of the hearing, the judge found that those reasons were appropriate, that there were good reasons for the defendant not to take the stand, and the judge denied relief, finding that the complaints here simply went to strategy and that counsel was not ineffective. Defendant submits that, in fact, counsel was ineffective. None of the reasons that he gave at the post-trial hearing were good reasons, appropriate reasons, given the law and given the facts of this case. Now, as a preliminary but very important matter, I would note that Illinois case law recognizes it is a very dangerous thing and likely to be ineffective assistance. If counsel promises the jury an opening statement that it will hear certain evidence but then fail to deliver, and the risk is that the jury will believe, possibly believe, that counsel failed to deliver because he was unable to deliver and will hold that against both counsel and the defendant. Now, of course, they're instructed not to. I'm sorry, Your Honor? They're instructed not to consider that out of those air prints. Well, that's true. That's true. They're always considered not to. That's true. That's true. Tell them, do they acknowledge and accept? It's not evidence. And so, obviously, by talking about evidence and opening statement, that can't be considered by the jury, but certainly where counsel is talking about evidence and opening statement, either counsel, presumably the jury's ears perk up and are waiting for that to come in, and especially where the defense is talking about evidence that apparently will be helpful to the defendant, once the state rests its case, certainly in that circumstance, the jury's going to look to the defense, okay, let's hear that helpful evidence, and then they don't hear it, and case law recognizes that's very prejudicial. Now, there are two limited exceptions recognized in the case law. One is where counsel promises the defendant will testify, the defendant does not, but it's because the defendant makes that decision of his own accord, contrary to counsel's wishes. The other is where unforeseen circumstances arise during the trial. Well, certainly the first exception does not apply here because, again, counsel acknowledged that he convinced his client not to testify. Defendant submits the unforeseen circumstances exception does not apply either, as I will explain. Now, Would that be the evidence the state introduced? Yeah, I assume unforeseen circumstances comes down to what the state comes up as their surprise of what happened. It could be something else, I suppose, but I would think that that would be what it is. Now, one reason counsel gave for convincing his client not to testify is that he was afraid his client would be impeached with a prior murder conviction, and clearly under the law in Illinois, anytime a defendant testifies, if he has prior convictions, the judge would have discretion to allow those in, and the jury could consider them as to credibility. At the same time, of course, it's not automatic. Under cases such as Montgomery and Williams, the Supreme Court has, of course, told trial judges to balance probative value against prejudicial impact and can decide in certain circumstances not to allow those prior convictions in. Under the circumstances, if counsel believes it might be important for his client to testify, but he's got a prior, he can and should file a pre-trial motion and eliminate. Now, it might succeed, it might not succeed, but take the shot. Be an advocate. Here, counsel did not file a motion and eliminate, and didn't talk about it one way or the other in his testimony at the post-trial hearing. Now, because he didn't talk about it, we don't know why he didn't do it. Maybe he thought from prior experience it wouldn't work, but case law says that if counsel fails to act on his client's behalf simply because he thinks it may not succeed, that is not effective representation. The figurative shrug of the shoulders is not zealous advocacy. Well, let me ask you, though, even notwithstanding the murder conviction, because I don't know what murder has to do with honesty or dishonesty, but what about the statements, the impeachment, would it be from the statements that the defendant gave to the police versus whatever he was going to tell the jury that it was personal use or I was going to my mom's or, you know, these different, it seems to me that the prosecutor had to be sitting there just praying this guy was going to get on the stand. And, I mean, the impeachment that would have, it seems to me the more damaging impeachment would have been had he got on the stand, had it just looked on him for half an hour over the police statements, you know, impeachment of those and just further reinforce those statements about how he bought cocaine and stuff like that. Okay, two points to be made. First of all, with respect to statements to the police, he told the police officer that he possessed the cocaine, told him that he broke it down into smaller amounts. Initially, the officer testified that the defendant admitted his intent to sell the cocaine. On cross-examination, the prosecutor retracted, acknowledged that the defendant never did admit intent to deliver. Now, the state, in its brief, notes the first part of the officer's testimony that the defendant admitted intent to deliver omits the retraction. As to the statement about the drugs belonging to the mother, that was made by the defendant to the police or to anyone else other than counsel. Now, another reason that counsel gave for telling his client not to testify is that he was afraid that his client would be impeached with information that counsel had conveyed to the state prior to trial in a notice of defense. Because apparently prior to trial, counsel told, excuse me, defendant told his attorney that the drugs actually belonged to his mother and that he was on his way to confront the mother with the drugs when he was arrested by police. And maybe on a particular, what in the world does that have to do with a necessity defense? Well, I was going to mention that as an aside, I'm not so sure that that would rise to the level of necessity. But apparently, counsel thought, at least within the broad parameters in mind, and of course, defense is obligated prior to trial to convey notice of defense. So I agree it's not like much of a necessity defense. In any event, he disclosed that information to the prosecution prior to trial. Well, by the time the trial began, the defense was, no, the drugs belong to Mr. Dockery, but solely for personal use. And so counsel testified he was very concerned that if the defendant got up and testified that the drugs were his for personal use, the prosecutor would come back and say, well, isn't it true that prior to trial you told us they belong to your mother? And interestingly, after counsel gave that testimony, the prosecutor, arguing against the post-trial motion, chimed in and said, yeah, you betcha we would have impeached the defendant with that information. Well, the fact of the matter is that Illinois case law very clearly holds that a defendant simply cannot be impeached at trial with information disclosed by the defense to the state in a pretrial notice of defense. That is not the same as a prior inconsistent statement. Now certainly, if Dockery had told the police or some other witness prior to trial that the drugs belonged to his mother, that would be appropriate impeachment. But he didn't. He did no such statements made by Dockery, simply the information conveyed by counsel prior to trial to the state in this notice of defense. And that is not a prior inconsistent statement. It's not proper impeachment. Now, of course, if counsel conducts a trial and gives advice to his client based on an accurate knowledge of the law, that may well be strategy, which cannot be challenged as ineffective. But his conduct, his handling of the trial, and his advice to his client is based on a misapprehension or misunderstanding of the law, as obviously this particular advice was. That is not strategy. That's ineffective. And if the state would have tried, if he would have testified and the state would have tried to bring that in, at that point, given the law, counsel would have had to get up and say, hey, I'm going to object. Whether that's permissible or I'll object, and that it be stricken. Because that's clearly, that's just simply not proper impeachment. Thank you. And the counsel also testified that, well, he was afraid that maybe the jury would, and also, as well, that's certainly not an unforeseen circumstance, even if it was proper, but it's not unforeseen. Counsel said, well, maybe his client, the jury would find his client to be an unlikable individual. Again, not an unforeseen circumstance, something that he would have known about pre-trial in terms of, is this guy likable, might he make or not make a good appearance on the stand if he testified. Going back to the prior record, the fact of the matter is, although the murder conviction never came in again, he told the jury in for a daring opening statement, he's got this prior serious offense, so in effect, it came in anyway. The cat was out of the bag, and yet he was telling his client, don't Well, I mean, generally, as a trial lawyer, I mean, civil and criminal, if you've got something that you think is bad, it's a pretty reasonably accepted theory that a good time to deal with it is in board jury, get these jurors conditioned to know and give them the promise that it's going to affect them. Well, and I would have a couple of responses. Again, one is you think you've got something bad, if you can't keep it out, you could have filed a motion eliminating. No guarantee I acknowledge, but he didn't even take that shot. The other thing, what's perhaps the worst thing of all in this case is that during his testimony at the post-trial motion hearing, he testified that as to his strategy and opening statement, and he said by that time he and his client had not made a final decision whether or not Dockery would take the stand, and so his strategy was to take a wait-and-see approach, keep all his options available on the table, not lock the defendant in, and not tell the jury that his client would testify. Well, what does he do in opening statement? He tells them, you will hear from Mr. Dockery. So if he had that strategy going in, he blew it up in opening statement, and then once he makes the promises in opening statement, at that point he locked himself in to bringing in the evidence through Dockery or somebody else, and he never did. So if he'd have put him on the stand, would that have cured everything? I'm sorry, your honor? If he'd have... had he put the defendant on the witness stand, would that have obviated his ineffective assistance claim? Well, it depends on what the testimony would have come out. If he would have put the witness on the stand, and the witness would have testified as to the matters discussed in opening statement, I think that was his only option at that point. I think he had to do that, or possibly he could call some other witnesses to give the same information. Yeah, this would be a very different case if that had happened. Well, but do you think the jury verdict would have been any different? Well, I didn't really get a chance to talk about it, but talk about it a little bit more in issue one, but it's also in issue two. Otherwise, the evidence here as to intent to deliver, the defendant submits, was either completely lacking or at least very weak. And again, in opening statement, counsel talked about matters that would have even further weakened the state case and bolstered the defendant's case. For example, explaining money in the defendant's pocket. There were several baggies? Yeah, altogether there were five baggies, 1.3 grams. Under the statute here, possession up to just under 15 would still qualify as possession. Here we have 1.3, so it could well have been for personal use. But defendant could have explained about the money in his pocket. Counsel said that came from legitimate working. But he never presented that at trial, and so the state comes in closing and says, well, you haven't heard anything about it coming from... Yeah, the scale would just be for making sure he gets what he's supposed to get for his own use. This is the instructions from his girlfriend's doctor, sitting next to the scale, but he didn't even view the video. I thought I read it here. Mr. Dockery says his pregnant girlfriend was a diabetic and had specific instructions for the measurement of the food. It was in the video from the search warrant, but his attorney never looked at it. Right, the attorney didn't look at it, and the judge thought that was improper. There was some testimony, and ultimately the judge found it wouldn't have made that much of a difference. Dockery said he would have liked to testify that the scale was used to allow for his girlfriend not to deal drugs on him, and the officer actually testified that it could well be to weigh drugs, and sometimes users do that to make sure they're not being shorted, not being cheated, etc. So in and of itself, certainly didn't establish intent to deliver. So respectfully, the defendant would ask for a remand for a new trial, again, just limiting it to the simple possession, because the evidence of intent to deliver was lacking in this case. Thank you, Your Honors. Ms. Duffy. Good afternoon, Your Honors. Mr. Fisher. I'd like to point out that at times when I read the opening brief, I couldn't really grasp until I read the record, that there was a crankle hearing, a post-trial crankle hearing here, where the defendant had alleged ineffective assistance of counsel, and the court appointed new counsel for him, and they proceeded with an evidentiary crankle hearing. At that hearing, the defendant testified, and counsel testified. Ultimately, the trial judge found that every complaint the defendant had against counsel amounted to a trial tactic or strategy that was immune from allegations of ineffective assistance of counsel, and at any rate, made perfect sense based upon the facts involved in the case. All of that except one thing, and that is what Justice O'Brien referred to, is counsel admitted he didn't view the DVD of the walkthrough when they executed the search warrant. However, he did review the police reports, written reports, and photographs that were taken at that time, and there was a letter next to a scale that the defendant's pregnant girlfriend was diabetic and was supposed to eat certain things or whatever. Let me ask, you know, and certainly the big issue here probably is if there's any issue at all at trials, it would be the intent to deliver, right? Yes, yes. The defendant didn't say he didn't have it on him. There's nothing, even if he had testified, there's no indication he would have said the cops planted it on me. So, I mean, what are 20 grams an ounce, as I recall, so 1.8 grams is a little less than a fourteenth of an ounce. That's not very much dough, is it? No, but no, it's a sufficient amount that it applies to the classification of felony that you're in possession of, and then is there evidence that what you intended to do... Well, there are drug crimes in this state that are felonies that are perfectly legal when you cross the border, so... Yeah, well, that's true, but, you know, that's not where he was. However, the drugs that he had had been broken down into five individual baggage, or rocks. It was crack cocaine. But people use crack cocaine, don't they use them as individual rocks? In other words, when you're going to light one up or burn one, however it is you choose to do it, you do it in a small dose at a time, right? So, would it be unusual for somebody that was for personal use to have a couple of grams of cocaine and break it into whatever size, kind of like the equipment to pack into your lunch, you know what I mean? Well, you could do that, or there is also the inference that if you have made the crack cocaine by putting it in a spoon, baking powder in water, and then let it recrystallize into crack from the original powdered cocaine, there was that paraphernalia in his house. And then he had these packets in his bicycle. I mean, you know, I don't think you'd find that that is individual use for even a day. That's a lot of crack cocaine to be consumed in one day by one person. So, there is an inference it wasn't for his personal use. But I mean, I guess I'm not saying that it would seem to me arguably, there's a pretty good question of fact if the defendant would get up and say, well, it's personal use. I don't, you know, this is less than this is one-fourteenth of an ounce, folks, or less than that. And you use it. So, I'm not saying that a jury couldn't find intent, but I'm saying, excuse me, a jury could very easily find that that doesn't rise to the level of proof beyond a reasonable doubt of intent. Well, I think they're well within the parameters of proof beyond a reasonable doubt, you know, to find that intent. If they had found him not guilty, that would have meant they weren't convinced beyond a reasonable doubt that that was his intent. But when you put together the fact that he'd been under surveillance, that he left his house, he had packages, individual packages of crack cocaine with him, he had paraphernalia in the house to make the crack cocaine from powdered cocaine, he had money on him, and I understand. Could it be, you know, innocent that he had $339 on him? Yes. But when the police asked him to stop riding his bicycle, he dropped it, he ran, they picked him up, they interviewed him at the police station, and he proceeded to tell them how he would get, pay so much money for 2.3 grams of cocaine, that's how it's normally bought, and then it's repackaged into $10 and $20 rocks. And the police officer had said at one time that he told him that he would sell them for $10 or $20, and then he had to admit, well, I don't know that he used the word sell. But at any rate, he explained to the police officer, as the police officer said, he explained to you how he did business. Yes, that's what he did. He explained to me how he did business. Well, the officer did say that he did not say he sold drugs. He didn't use the word sold. No, he didn't. What is the strategic purpose of not filing a motion to eliminate? On which issue? A motion to eliminate to name it. The attorney testified that he didn't want Mr. Jaffray to be put on the stand and be impeached with his murder conviction, which he all but broadcast, but in, but he said he was afraid if he got on the stand, they would impeach him with this. For what purpose would it be good strategy not to file a motion to eliminate to cure that speculation? Well, as to his prior murder conviction, I don't think there's any question that he would have been impeached with that. It's a crime of moral turpitude. So it's unnecessary to do a motion to eliminate? Is that the state's argument? On that offense, I would say it would have been unnecessary to do that. Haven't there been, it's a crime of moral turpitude, but haven't there been cases where, and affirmed, where the, or even worse, where a child has, yes, it's a crime of moral turpitude, but in light of what we're looking at here, that is so prejudicial. The prejudicial effect of bringing that conviction in, in light of what the crime here is, so far outweighs any probative value that while it's a crime of moral turpitude, the judge has discretion to say, that's just over the, you know, we're talking here about somebody with a couple grams of dope and I'm not going to let that murder conviction in because I think it's too prejudicial. He could do that, right? He could have done that. And if I'm not mistaken, and I, you know, I don't, maybe Mr. Fisher will be able to tell you, but I think this defendant may still have been on mandatory supervised release or probation for, you know, some type of contact for this conviction. At any rate, he'd been released from prison for it. There were also statements made, prior statements made, that he filed this defense of necessity because the defendant had said that these weren't my drugs, they belonged to my mother. Well, his mother had left the state and moved to Minnesota quite some time before this event occurred. So, you have a problem with any ability to bring that in and impeach him with that. That notice of defense, I mean, how can you base sound trial strategy on law that you don't, that's inaccurate, that you don't know the law and you're basing your strategy on that? How can that ever be sound? You mean as to whether the defense The attorney said I didn't want him to be impeached with the abandoned defense. Right. Well, he thought, he specifically said he thought that the state would call his attorney at that time and file that notice. But the case law says that that you know, can't do that. It may very well say that, but until you get what this judge would have allowed into evidence, we don't know that. And we don't know whether or not it would have applied to the filing of the defense of necessity or statements made by the defendant to someone else. To the police, for example. Now, there wasn't any discussion about whether he told the police those weren't my drugs. But it wasn't relevant at that point either because he wasn't presenting the defense of necessity. And this was just the weekend before the trial was going to begin that the defendant told his attorney you know what, I'm sorry, I lied to you, that's not the way it was. Those were not my mom's drugs, they were mine, but I'm a drug user, I'm not a drug dealer. And that's absolutely the road that counsel took. The defendant is not a drug dealer, he's a drug user. Well, you have to admit he's a drug user in order to present that defense. Proving that he was a drug user was not going to be too difficult with the evidence. With the possession with intent to deliver, the fact that he's a drug dealer, for example, I've got a neighbor who's a car salesman. But every car he's driving isn't for sale. And so the fact that, the state has to prove that not that he's a drug dealer, but he intended to deliver those drugs that were in his pocket. Right? Not that, you know. I mean, it seems to me now, could you get a jury with a small amount, could a clever trial lawyer convince a jury to get on there and say, yeah, I'm a drug user, but this isn't very much. And I didn't leave it home because I'm afraid somebody would see it. Could that work? Absolutely. Some places that would work quite well. So is, did you deprive him of that? In the special light of the fact, normally no, but in the special light of the fact, you've already told the jury you're going to hear from him. He's going to get on the witness stand and admit I'm a drug user. I think the jury probably figured that out without him saying it. I think so. And you know, it looked like the defender wanted to testify, but counsel didn't think he should get up there. You know, having tried a great many cases as a public defender, my nightmare was the client who wanted to testify and tell his story. Because it always went to heck in a hand basket. I understand that. And we don't know everything that counsel knew about the defendant that might come out of his mouth. But at any rate, the trial judge, in a written order, found that he was not denied the effective assistance of counsel. Even though perhaps he might fault a bit of the performance, he was not prejudiced because the outcome wouldn't have been any different. And again, while the evidence of intent, his intent is not overwhelming, is there sufficient amount there for the jury to infer that his intent was to deliver it? Yes, there was. And unless you have any more questions? No, thank you, Ms. Duffy. Mr. Fisher, some rebuttal? Yes, thank you, Your Honor. But before you get started, you know, we've had this conversation. Let me just ask you this. Let's suppose Mr. Dockery gets a new trial. What do you think the likelihood is that he's going to skate on the intent charge? Assuming the evidence is the same as when he gets up and says, I don't know. Well, I mean, for example, if he gets up and says, I have this for personal use, and in terms of the money in my pocket, I was an industrious individual. I shoveled snow, cut grass, did some jobs for people around the neighborhood. Even better if you can corroborate that with one of those individuals coming in to back that up. But then counsel has an argument to the jury. Again, closing argument here, prosecutor said, oh, what about that money in his wallet? You haven't heard where that's come from. Therefore, that must be evidence of drug dealing. Well, defendant testifies, otherwise it's credibility, but it makes for a much stronger defense, certainly. And again, the other evidence as to drug dealing was very weak here. There was no real indicia or the typical indicia of drug dealing found on the defendant's person when he was arrested. In terms of his residence, there was a scale. Again, if he would have testified, he presumably would have testified consistently with his post-trial motion testimony that he used it to weigh out amounts of food so that in and of itself didn't prove that much. There was no other indicia of drug dealing in his residence. There was a spoon, a couple of spoons, I think he finds the spoons in the residence, but the state said, well, maybe that was used to mix drugs to sell. Well, they also had burn marks on the spoons, which would be consistent with freebasing or personal use, and that's what the defendant claimed he did. No testimony that he was ever seen engaging in hand-to-hand transactions. No testimony that people were seen coming in and out of the residence of all hours of the day or night. And again, 1.3, it's a small amount, so I think there's an excellent chance that a jury would have come back guilty possession, but not guilty as to the intent to deliver. Now, one thing, the state said in an argument with respect to the counsel telling his client, don't testify because you'll be impeached with what we told the state in this pretrial notice of the defense. If I heard counsel correctly, she said, well, we don't know what this judge would have allowed in. To me, that's kind of scary because if it's inadmissible, if it's against the law to bring it in, say, well, maybe the judge would have allowed it in. How can you try a case expecting the judge to make erroneous rulings? And if that's what the judge does, you preserve it, you argue it against it, you bring in the case law, if you still don't get relief, well, then I'm arguing that issue on appeal. But to say, well, the judge might allow it in even if the law goes the other way. I don't think that's what counsel was thinking. Counsel was thinking that's going to come in, and the trial prosecutor also had a mass misapprehension because she said, yeah, you bet we would. A lot of trial lawyers might think that. And people make mistakes. I'm not fallible. I don't claim to be. But to say, well, if the thought was, well, it's not proper impeachment, but well, maybe the judge will bring it in, I don't see how you can try a case like that. That's not effective assistance. But there's two prongs, again, and that is the prejudice prong. And in light of this statements made to the police, this is going to be a dear diary day for the prosecutor when this guy gets on the stand. Because now all he gets to do is TB-style cross-examination and beat him up with those statements and just keep reinforcing them. Except the only statement is, yeah, I possess this drug, and I divide it into small amounts. At the post-trial hearing, he testified that the cocaine users have little quirky things they do when they use, and his is to divide them up into small amounts. I don't know if that's credible. I do not want to misrepresent the record. I do not recall the officer testifying that the defendant said that this was his business. I do recall the officer testifying initially that the defendant told him that he sold drugs, but then on cross-examination, the officer admitted, no, the defendant never said that. Your Honor, set of the record, again, I don't want to misrepresent it. I do not recall reference to business. One other thing I would mention very quickly is that counsel said in the opening statement, one of the things he said is one of the stresses on the defendant's life is that his mother and some other people living with him use drugs. And I believe counsel in her argument said, well, if he's got these drugs on this person, he's bicycling around. Why wouldn't you leave him at home? Maybe he's afraid his mother's going to steal his fashion. At least at home, I don't know. Thank you. In summary, the evidence of drug dealing was very weak here, and that's where the prejudice comes in. In addition to counsel saying to the jury, you're going to hear all this, you're going to hear all this. I've never served on a jury, but if I ever would, and counsel tells me that, I'm going to be waiting for that. Then he doesn't bring it in. I think, well, was he making promises he couldn't keep? And again, the case law recognizes that's likely ineffective assistance. My guess is you're never going to sit on a criminal jury. That's fine with me. But I truly believe counsel made very serious errors. It's dangerous to start talking about prior record, but once you do, if you've got a strategy, you better follow through. If you think there's going to be a payoff, and then he doesn't follow through and he tells his client, well, if you get on this band, it's like him following through. It's going to come out. He already promised it. It's all over the board. Defendant submits he was denied a fair trial. Respectfully ask, Your Honors, for a new trial. Thank you, Mr. Fischer. Thank you, Your Honors. Ms. Duffy, thank you, too, and right now this matter will be taken under advisement. A written disposition will be issued, and right now we'll be in a brief recess for a panel change.